# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**JAMIE LUCAS,**
**Claimant Below, Petitioner**

**FILED**

June 26, 2020
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)  No. 19-0393** (BOR Appeal No. 2053450)
(Claim No. 2016005543)

**PATRIOT COAL CORPORATION,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Jamie Lucas, by Counsel John H. Shumate Jr., appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Patriot Coal Corporation, by Counsel Henry C. Bowen and James W. Heslep, filed a timely response.

The issue on appeal is additional compensable conditions. The claims administrator denied the addition of cervical intervertebral disc disorder with myelopathy and lumbar disc disorder with myelopathy to the claim on February 27, 2018. The Office of Judges affirmed the decision in its September 26, 2018, Order. The Order was affirmed by the Board of Review on March 22, 2019.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Lucas, an underground mining foreman, was injured in the course of his employment on August 20, 2015, when a rock fell in the mine and pinned him to a coal rib. The Employees' and Physicians' Report of Injury, completed that day, indicates Mr. Lucas was treated at Raleigh General Hospital and diagnosed with concussion with loss of consciousness and lumbar contusion. An x-ray showed no evidence of fracture or dislocation in the thoracic or lumbar spine. A cervical CT scan showed no acute findings. A brain CT scan showed no acute findings. A second Employees' and Physicians' Report of Injury was completed on August 23, 2015, at MedExpress. The diagnoses were listed as intercranial injury, unspecified respiratory condition, headache,

1

lumbar sprain, and neck sprain. The claim was held compensable for head concussion, cervical strain, thoracic strain, and lumbar strain on August 31, 2015.

A lumbar CT scan was performed on September 2, 2015 and showed no acute findings. Mr. Lucas sought treatment from Barry Vaught, M.D., on October 27, 2015. The treatment note indicates diagnoses of cervical radiculopathy, bilateral carpal tunnel syndrome, and post-concussion syndrome. An EMG performed in office that day showed moderate bilateral carpal tunnel syndrome as well as evidence of C5-6 radiculopathy. A cervical MRI was performed on November 23, 2015, and revealed no disc protrusions, canal stenosis, or neural foraminal stenosis.

On December 17, 2015, Mr. Lucas sought treatment from John Orphanos, M.D., his treating physician. Mr. Lucas reported bilateral hand and leg numbness and tingling. The diagnoses were hand paresthesia, low back pain, and neck pain. Dr. Orphanos recommended conservative treatment since the MRI showed nothing that would be causing neck or radicular pain.

A.E. Landis, M.D., performed an independent medical evaluation on January 18, 2016, in which he diagnosed cervical and lumbar contusion/strain/sprain type injuries. He noted that the compensable conditions in the claim are head concussion, cervical strain, thoracic strain, and lumbar strain. Dr. Landis opined that the EMG showed radiculopathy, which does not correlate with clinical findings. He also opined that the MRI showing an L5-S1 disc herniation also does not correlate with clinical findings. Dr. Landis recommended that Mr. Lucas undergo an aggressive physical therapy regiment for four to six weeks and then an aggressive work-conditioning program. He found that at the time of the evaluation, Mr. Lucas was capable of working modified duty. Dr. Landis opined that Mr. Lucas had not yet reached maximum medical improvement but would shortly after his rehabilitation programs.

Mr. Lucas returned to Dr. Orphanos on February 2, 2016. Dr. Orphanos noted that a lumbar MRI showed degenerative disc disease and lumbar spondylosis. There was a small L5-S1 disc herniation. Dr. Orphanos diagnosed low back pain and neck pain. On May 10, 2016, Mr. Lucas was treated by Andrew Thymius, M.D., who diagnosed lumbar sprain, lumbosacral radiculopathy, and lumbar disc displacement.

On May 16, 2016, Dr. Landis performed a second independent medical evaluation in which he reiterated his diagnoses of cervical and lumbar contusions/sprains. He found some evidence of symptom magnification given that Mr. Lucas's clinical findings were not consistent with his reported symptoms. Dr. Landis opined that Mr. Lucas had reached maximum medical improvement and assessed 10% whole person impairment using West Virginia Code of State Rules § 85-20. Dr. Landis was unable to use the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993), because the range of motion studies were invalid due to voluntary guarding.

In a June 3, 2016, addendum, Dr. Landis stated that he was asked to determine if Mr. Lucas could return to work. Dr. Landis opined that Mr. Lucas would be unable to return to work due to his symptom magnification. He strongly suggested a functional capacity evaluation to determine what level of work Mr. Lucas could perform but noted that it would likely be difficult to get an

accurate understanding of his functional level. Dr. Landis stated that if he had to assign a level of functioning, it would be sedentary due purely to psychological reasons.

Dr. Vaught performed a neurological examination on June 8, 2016, in which he assessed cervical radiculopathy, post-concussion syndrome, carpal tunnel syndrome, paresthesia of the skin, and memory loss. Dr. Vaught recommended a lower extremity EMG and a referral to neuropsychology. Mr. Lucas was granted a 10% permanent partial disability award on June 16, 2016. On June 21, 2016, Dr. Thymius noted that Mr. Lucas reported 70% pain relief following cervical epidural steroid injections. Mr. Lucas also stated that his back pain is worse and requested referral to a surgeon. Dr. Thymius assessed lumbosacral intervertebral disc displacement and cervical disc disorder with radiculopathy.

In a July 1, 2016, treatment note, Syed Zahir, M.D., diagnosed chronic neck and back pain with radiculopathy. He did not believe Mr. Lucas had reached maximum medical improvement. Dr. Zahir recommended that Mr. Lucas see a neurosurgeon as well as a neuropsychiatrist. On August 19, 2016, Mr. Lucas reported continued pain in his neck, arms, and legs. The impression remained chronic neck and back pain with radiculopathy in both arms and legs. Dr. Zahir opined that Mr. Lucas needed to see a surgeon. On September 20, 2016, Dr. Zahir noted that Mr. Lucas had been trying to lose weight to alleviate some of his pain. He opined that Mr. Lucas was unable to do any type of gainful work. The diagnoses remained the same.

Dr. Zahir completed a diagnosis update on February 10, 2016, in which it was noted that Mr. Lucas was experiencing numbness and weakness in his neck, lumbar spine, and extremities. Dr. Zahir noted that a MRIs showed a disc protrusion at L5-S1, loss of normal cervical lordosis, bilateral foraminal stenosis with a disc bulge at C5-6, and cervical facet changes from C4-C6. He requested the addition of cervical intervertebral disc disorder with myelopathy and lumbar disc disorder with myelopathy to the claim.

On March 6, 2017, Dr. Landis performed an independent medical evaluation in which he noted that he had reviewed additional records since Mr. Lucas's last evaluation. Dr. Landis again diagnosed contusion/sprain of the cervical and lumbar spine. He noted that since the compensable injury, Mr. Lucas has developed significant psychological issues and was diagnosed with post-traumatic stress disorder. Dr. Landis stated that he disagrees with Dr. Zahir that Mr. Lucas needs referral to a neurosurgeon. He stated that Mr. Lucas would have to be treated for his severe psychiatric condition, reduce his weight by at least 150 pounds, quit smoking, and get his diabetes under control to even qualify for surgery. Dr. Landis opined that Mr. Lucas's most significant impairment is for his psychological issues. He assessed 5% cervical impairment and 5% lumbar impairment.

Saghir Mir, M.D., performed an independent medical evaluation on June 30, 2017, in which he diagnosed cervical strain, resolved thoracic strain, lumbosacral strain superimposed on pre-existing degenerative changes, and mild headaches due to cerebral concussion. Dr. Mir agreed with Dr. Landis that Mr. Lucas had reached maximum medical improvement for his compensable conditions. Dr. Mir assessed 5% cervical impairment, 5% lumbar impairment, 0% thoracic impairment, and 2% impairment for residual headaches. Dr. Mir recommended no additional

treatment. Dr. Mir noted that Mr. Lucas has significant functional and psychological overlay with symptoms magnification. He also has significantly over-exaggerated symptoms and his range of motion measurements are not valid. Dr. Mir opined that from an orthopedic standpoint, Mr. Lucas could return to full duty work; however, he required authorization from a psychiatrist before he could return to work.

The claims administrator denied the addition of cervical intervertebral disc disorder with myelopathy and lumbar disc disorder with myelopathy to the claim on February 27, 2018. The Office of Judges affirmed the decision in its September 26, 2018. Order. It found that the claim has been held compensable for head concussion, cervical strain, thoracic strain, and lumbar strain. The Office of Judges determined that the treatment records of Dr. Orphanos indicates Mr. Lucas's MRI showed lumbar degenerative disc disease and spondylosis. There was a small central disc herniation which was described as not impressive but otherwise, there were no acute findings. The Office of Judges noted that Mr. Lucas was awarded a 10% permanent partial disability award for his compensable injuries. It also noted that decisions denying additional medical treatment were affirmed by the Board of Review. Further, this Court affirmed denial of referral to a neurosurgeon and noted that Mr. Lucas has degenerative disc disease and spondylosis, both of which are preexisting conditions. The Office of Judges concluded that Mr. Lucas had reached maximum medical improvement for his compensable injuries, as found in reports by Drs. Landis and Orphanos. The Office of Judges further concluded that Mr. Lucas's current symptoms are not the result of the compensable injury and instead originate from preexisting degenerative conditions. Therefore, the Office of Judges determined that the requested conditions should not be added to the claim. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on March 22, 2019.

After review, we agree with the decision of the Board of Review. For an injury to be compensable it must be a personal injury that was received in the course of employment, and it must have resulted from that employment. *See Barnett v. State Workmen's Compensation Commissioner*, 153 W. Va. 796, 172 S.E.2d 698 (1970). Mr. Lucas failed to show that cervical intervertebral disc disorder with myelopathy and lumbar disc disorder with myelopathy resulted from the compensable injury. Imaging scans indicate the presence of degenerative changes in the cervical and lumbar spines. Drs. Landis and Mir both opined that Mr. Lucas has degenerative changes and that he has reached maximum medical improvement for his compensable injury. The denial of the addition of cervical intervertebral disc disorder with myelopathy and lumbar disc disorder with myelopathy to the claim is therefore affirmed.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: June 26, 2020**

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**NOT PARTICIPATING**:

Justice Margaret L. Workman